Peelle, J.,
delivered the opinion of the court.
The claimant, late lieutenant-colonel Ninth United States Volunteers, appointed under the act of May 11, 1898 (30 Stat. L., 698), authorizing the President to appoint, by and with the advice and consent of the Senate, officers possessing immunity from disease incident to tropical climates, seeks to recover the difference between the travel pay and commutation of subsistence allowed him by the accounting officers of the Treasury Department from the place of his discharge, at Camp Meade, Pa., to Washington, D. C., and to his residence in Creede, Colo.
The claimant applied by letter, dated at W ashington, D. C., for appointment under the act above stated. He was nominated by the President to the Senate for appointment as lieutenant-colonel from Colorado, and, having been confirmed by the Senate, was appointed and commissioned by the President, and accepted the office and took the oath required at Washington, D. C. In his acceptance of the office he notified the Adjutant-General that his residence was in Creede, Colo.
After having served in Cuba and in the United States from July, 1898, to May 25, 1899, he was discharged at Camp Meade, Pa., and was paid travel pay from the place of his discharge to Washington, D. C., amounting to $64.17.
He claims travel pay and subsistence according to his rank from the place of his discharge to the place of his residence, a distance of 2,044 miles, which, “computed at the rate of one day for every 20 miles,” amounts to $936.83. Revised Statutes, section 1289, provides:
“When an officer is (honorably) discharged from the service (except by way of punishment for an offense), he shall be allowed transportation and subsistence from the place of his discharge to the place of his residence at the time of his *97 appointment, or to the place of bis original muster into the service. The Government may furnish the same in kind, but in case it shall not do so, he shall be allowed travel pay and commutation of subsistence, according to his rank, for such time as may be sufficient for him to travel from the place of discharge to the place of his residence, or original muster into service, computed at the rate of one day for every twenty miles.”
It will be noted that the section immediately following (1290) in respect of a soldier provides that such travel paj" and commutation of subsistence shall be allowed “from the place of his discharge to the place of his enlistment, enrollment, or original muster into the service.”
The act of January 11, 1812, section 22 (2 Stat. L., 674), provides “that whenever any officer or soldier shall be discharged from the service, except by way of punishment for any offense, he shall be allowed his pay and rations, or an equivalent in money, for such term of time as shall be sufficient for him to travel from the place of discharge to the place of his residence, computing at the rate of twenty miles to a day.” Prior statutes embodied substantially the same provisions (1 Stat. L., 749; 2 Stat. L., 132).
The same section was subsequently reenacted January 29, 1813, section 15 (2 Stat. L., 796), but by the act of June 20, 1864, section 8 (13 Stat. L., 145), it was provided that “where the Government shall furnish transportation and subsistence to discharged officers and soldiers from the place of their discharge to the place of their enrollment or original muster into the service, they shall not be entitled to travel pay or commutation of subsistence.”
By the act of June 16, 1874 (18 Stat. L., 72), making appropriation for the support of the Army and for allowances to officers for the transportation of themselves and their baggage, and for other purposes, it was provided “that only actual traveling expenses shall be allowed to any person holding employment or appointment under the United States, and all allowances for mileages and transportation in excess of the amount actually paid are hereby declared illegal.” * * *
The a<?ts to which reference has been made were carried into the .Revised Statutes as sections 1289 and 1290, and they were somewhat modified bjT the act of February 27, 1877 (19 Stat. *98 L., 243, 244), striking out the word “honorably” from both sections and inserting the words “except by way of punishment for an offense ” as they appear in brackets in each of the sections.
Under the act of 1813 {supra) the Second Comptroller, in a decision rendered by him August 13, 1850, said “for more than thirty years the invariable practice has been to compute the traveling allowances for a discharged soldier to the place of his enlistment, that being considered as his place of residence within the meaning of the act” (2d Comp. Dec., vol. 14, p. 35); and the same officer, about one year later, in the case of Major William H. Russell, among other things, said “the object of that section was to provide an indemnity to the officer and soldier against any expense to which he might be put' by being discharged from service at a place different from that at which he entered it. ”
The present Second Comptroller, in the case of the claimant herein, among other things, said, “I think it clear that the law was never intended to make any distinction between officers and enlisted men as to the j>Iace to which they should be returned on their discharge, or to which their travel pay should be computed when not furnished transportation and subsistence in kind;” and in view of the previous ruling of the accounting officers of the Treasury, saying that such ruling was “in accordance with the practice which has obtained, with scarcely any exception, under the laws and decisions herein quoted, from 1813 to the present time, a period of more than ninety year’s,” the residence of the claimant, for the purpose of adjusting his travel pay, was held to be the place where he sought and accepted his appointment and where he was qualified to discharge the duties of his office.
The claimant’s place of original muster into the service, or qualification for duty, was in the city of Washington, D. C., and under the act the Government has the option of allowing travel pay to the place of residence or to the place of original muster into the service.
However, in the present case the claimant’s place of appointment and original muster into the service was one and the same.
Neither section 1289 nor 1290, we are advised, has been the *99 subject of construction by the Supreme Court, but this court, in the case of Sherburne (16 C. Cls. R., pp. 491, 498), in effect sustains the ruling of the Assistant Comptroller. However, the execution of the statutes, so far as wo are advised, have been pursuant to the construction placed upon them by the various accounting- officers of the Treasury Department.
If we were free to consider the construction of the statute, untrammeled by the long and uniform ruling of the Department, we might reach a different conclusion, but “the contemporaneous construction of the statute by those charged with its execution, especially when it has long prevailed, is entitled to great weight, and should not be' disregarded or overturned except for cogent reasons, and unless it is clear that such construction was erroneous.” (United States v. Johnston, 124 U. S., 236-253; United States v. Moore, 95 U. S., 760-763.
Wo are not clear that the construction of the statute by the accounting officers was erroneous, and for that reason we must hold that the claimant is not entitled to recover, and his petition is dismissed.
Nott, Ch. J., took no part in the decision of this case.